# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Daufuskie Island Utility Company, Inc., Appellant,

v.

South Carolina Office of Regulatory Staff, Haig Point Club and Community Association Inc., Melrose Property Owner's Association, Inc., and Bloody Point Property Owner's Association, Respondents.

Appellate Case No. 2018-001107

———————

Appeal From The Public Service Commission

———————

Opinion No. 27905
Heard April 18, 2019 – Filed July 24, 2019

———————

## REVERSED AND REMANDED

———————

Thomas P. Gressette Jr. and George Trenholm Walker, Walker Gressette Freeman & Linton, LLC, of Charleston, for Appellant.

Andrew McClendon Bateman and Jeffrey M. Nelson, of Columbia, for Respondent South Carolina Office of Regulatory Staff; John Julius Pringle Jr. and Lyndey Ritz Zwing Bryant, Adams and Reese LLP, of Columbia, for Respondents Haig Point Club and Community Association, Inc., Melrose Property Owner's Association, Inc., and Bloody Point Property Owner's Association.

———————

**JUSTICE FEW:** Daufuskie Island Utility Company, Inc. (DIUC) filed an application with the Public Service Commission for a rate increase for the water and sewer service it provides to residents of Daufuskie Island in Beaufort County. During a hearing on the merits of the application, the commission approved a purported settlement agreement between the Office of Regulatory Staff (ORS) and three property owners' associations: Haig Point Club and Community Association Inc., Melrose Property Owner's Association, Inc., and Bloody Point Property Owner's Association. DIUC appealed, and we reversed. *Daufuskie Island Util. Co., Inc. v. S.C. Office of Regulatory Staff*, 420 S.C. 305, 803 S.E.2d 280 (2017). We found the agreement "was not a true settlement" because DIUC did not agree to it. 420 S.C. at 315-16, 803 S.E.2d at 285-86. We remanded the case to the commission for a new hearing on all issues. 420 S.C. at 316, 803 S.E.2d at 286.

On remand, the commission held a second hearing on the merits and issued a second order. DIUC now appeals the second order, arguing the commission erred in disallowing certain rate case expenses[1] and refusing to include items of capital in DIUC's rate base.[2] DIUC argues ORS and the commission applied a higher standard of scrutiny on remand in retaliation against DIUC for successfully seeking reversal of the commission's initial order. At oral argument on this second appeal, when pressed by the Court to respond to DIUC's "retaliation" argument, appellate counsel for ORS conceded a heightened standard had been employed. Counsel stated, "Was it a higher standard than was previously applied? It certainly was a different standard," and "I don't believe it was a lesser standard, you are correct." Pressed further, counsel stated, "You're right. There is a difference . . . [in] the way we handled the methodology . . . ." Finally, a Justice of the Court challenged counsel,

---

[1] Rate case expenses are expenses incurred by a utility in the preparation of a rate application and in related proceedings before the commission. *See generally* 73B C.J.S. *Public Utilities* § 87 (2015) (describing rate case expenses as "expenses incurred during a rate-making proceeding"); 64 Am. Jur. 2d *Public Utilities* § 127 (2011) (describing rate case expenses as "costs incurred by a utility to prepare and present a rate case").

[2] "'The "rate base" is the amount of investment on which a regulated public utility is entitled to an opportunity to earn a fair and reasonable return.' It 'represents the total investment in, or the fair value of, the used and useful property which it necessarily devotes to rendering the regulated services.'" *Utils. Servs. of S.C., Inc. v. S.C. Office of Regulatory Staff*, 392 S.C. 96, 101 n.2, 708 S.E.2d 755, 758 n.2 (2011) (quoting *S. Bell Tel. & Tel. Co. v. Pub. Serv. Comm'n of S.C.*, 270 S.C. 590, 600, 244 S.E.2d 278, 283 (1978)).

"The reason that [the rate case expenses] were paid the first go around . . . , but disallowed the next time, is because of the higher level of scrutiny."  Counsel responded, "At the end of the day I think that's a fair characterization."

We appreciate the professionalism of appellate counsel as an officer of the court in giving candid answers to our direct questions.  We do not attribute the actions of ORS to its appellate counsel.  Nevertheless, these retaliatory actions by ORS are deeply troubling.  We rightly demand more of governmental representatives—like ORS—than such an unprofessional approach to the legitimate financial interests of South Carolina businesses, *and* of South Carolina utility ratepayers.  Likewise, we expect more respect for the rulings of this Court than administrative officers exhibit when they retaliate against parties who prevail against them on appeal.

The misconduct by ORS, however, does not necessarily require the commission's order on remand be reversed.  For two reasons, we find it must be.  First, ORS is not simply a party to a rate case application.  Under the legislation creating it, "ORS . . . has the power to review and investigate rate applications, and to make recommendations to the PSC."  *Utils. Servs. of S.C., Inc. v. S.C. Office of Regulatory Staff*, 392 S.C. 96, 105, 708 S.E.2d 755, 760 (2011); *see generally* S.C. Code Ann. § 58-4-10(B) (Supp. 2018) (providing ORS "must represent the public interest of South Carolina before the commission" and "must be considered a party of record in all filings, applications, or proceedings"); § 58-4-50(A)(2), (9) (2015) (providing ORS must "make inspections, audits, and examinations of public utilities" and "serve as a facilitator or otherwise act directly or indirectly to resolve disputes and issues involving matters within the jurisdiction of the commission").  Specifically, in a rate application proceeding, ORS must "review, investigate, and make appropriate recommendations to the commission with respect to the rates charged or proposed to be charged by any public utility."  § 58-4-50(A)(1).

These statutes require ORS to fulfill a unique role in proceedings before the commission.  They require ORS to act in a fair and unbiased manner to protect the public interest, provide public utilities a fair rate application proceeding, and make appropriate and reliable recommendations to the commission.  When ORS fails to meet this responsibility, it necessarily affects the decision-making of the commission.  In this case, ORS made recommendations to the commission which the commission accepted.  The commission's decision cannot be separated from the higher standard of scrutiny ORS now concedes it applied on remand from its unsuccessful first trip to this Court.

Second, the commission's own treatment of DIUC's rate case expense claims demonstrate the commission also employed a heightened standard of scrutiny on remand. In the commission's initial order, the commission awarded DIUC a portion of rate case expenses for work performed by its consultant, Guastella Associates. Addressing DIUC's initial request to recover $191,200 in rate case expenses, the commission wrote,

> ORS proposed . . . current rate case expenses in the amount of $75,000 for [Guastella's] preparation of the Application, developing rate models, calculating test year data, filing other rate case documents and legal expenses. . . . The Commission agrees with ORS's judgment that $75,000 in rate case expenses is a reasonable amount to pass to ratepayers for this rate case.

On remand, DIUC requested more rate case expenses than the $75,000 the commission awarded the first time, including $542,978 for Guastella's services. During the remand hearing, when asked by a commissioner to explain ORS's rate case expense recommendation—specifically, "how much goes to Guastella Associates"—a witness for ORS responded, "'Zero goes to Guastella Associates,' is the quick and easy answer. They have submitted, roughly $540,000 worth of invoices that were insufficient, and we removed those." The commission then adopted ORS's proposed adjustment and excluded recovery of the entire $542,978. The commission's wholesale rejection of every Guastella invoice appears retaliatory because the commission approved and awarded $75,000 for Guastella's services after the initial hearing.[3]

Additionally, in contrast to the commission's assessment of the invoices in its order after the initial hearing, the commission heavily scrutinized the format of the Guastella invoices on remand. The commission's order on remand provides, "The

---

[3] Although the commission's order on remand appears to allow DIUC the ability to recover the $75,000 awarded after the initial hearing, the order on remand only specifies, "The $75,000 is a figure that was used in the previous hearing and was arrived at during settlement negotiations between the ORS and POAs." Because the commission's order precludes recovery for all of the invoices detailing the rate case services performed by Guastella, it is not clear to us how the order on remand actually permits DIUC the ability to recover the previously awarded rate case expenses.

Commission agrees with ORS. . . . The evidence shows that a large sum of what DIUC seeks was based on invoices that could not be verified." The commission's order denying DIUC's motion for reconsideration also provides, "ORS . . . completed a thorough review of all invoices from Guastella Associates, and found that they 'contained mathematical errors, lacked sufficient detail, and/or did not appear to be paid.'" However, the commission expressed these concerns with the invoices only in its evaluation on remand. The commission's harsher treatment of the *same* invoices on remand—of which rate case expenses were previously awarded—convinces us the commission itself employed a retaliatory standard of scrutiny.

The commission is "vested with power . . . to fix just and reasonable standards, classifications, regulations, practices, and measurements of service to be furnished, imposed, or observed, and followed by every public utility in this State." S.C. Code Ann. § 58-3-140(A) (2015). "When presiding over a ratemaking proceeding, the PSC takes on a quasi-judicial role." *Utils. Servs.*, 392 S.C. at 105, 708 S.E.2d at 760. In *Utilities Services*, we explained,

> [T]he PSC is the ultimate fact-finder in a ratemaking application. It has the power to independently determine whether an applicant has met its burden of proof. The PSC is not bound by ORS's determination that an expenditure was reasonable and proper for inclusion in a rate application. The PSC may determine—independent of any party—that an expenditure is suspect and requires further scrutiny.

392 S.C. at 106, 708 S.E.2d at 761.

However, in scrutinizing evidence during a ratemaking proceeding, the commission should evaluate the evidence in accordance with objective and consistent standards. *See Utils. Servs.*, 392 S.C. at 113, 708 S.E.2d at 764-65 (acknowledging "the PSC's duty to fix 'just and reasonable' rates" includes evaluating evidence within "the context of an objective and measurable framework"); *see also* § 58-3-225(A) (2015) ("Hearings conducted before the commission must be conducted under dignified and orderly procedures designed to protect the rights of all parties.").

This Court's review is governed by section 1-23-380 of the South Carolina Code (Supp. 2018). We may reverse an order of the commission "if substantial rights of the appellant have been prejudiced because the [commission's] findings, inferences,

conclusions, or decisions" are "arbitrary." § 1-23-380(5)(f). A decision by the commission is arbitrary "if it is without a rational basis, is based . . . not upon any course of reasoning and exercise of judgment, is made at pleasure, without adequate determining principles, or is governed by no fixed rules or standards." *Deese v. S.C. State Bd. of Dentistry*, 286 S.C. 182, 184-85, 332 S.E.2d 539, 541 (Ct. App. 1985) (citing *Hatcher v. S.C. Dist. Council of Assemblies of God, Inc.*, 267 S.C. 107, 117, 226 S.E.2d 253, 258 (1976); *Turbeville v. Morris*, 203 S.C. 287, 315, 26 S.E.2d 821, 832 (1943)).

The commission's denial of DIUC's rate case expenses it previously permitted was arbitrary because DIUC's evidence was subjected to a retaliatory, higher standard of scrutiny on remand. As counsel for ORS conceded, "The reason that the rate case expenses were paid the first go around, but disallowed the next time, is because of the higher level of scrutiny." This arbitrary, higher standard of scrutiny affected substantial rights of DIUC. The commission's findings of fact and conclusions of law must be reversed. We remand to the commission for a new hearing.

DIUC's rate application will now go before the commission for a third hearing. In our initial reversal and remand, we explained certain points of law applicable to the merits of DIUC's claims. *Daufuskie Island Util. Co.*, 420 S.C. at 316-20, 803 S.E.2d at 286-88. In this reversal and remand, we do not address the merits at all. In reversing the commission twice, we do not intend to make any suggestion of our views of the merits. Rather, we simply require the commission and ORS evaluate the evidence and carry out their important responsibilities consistently, within the "objective and measurable framework" the law provides. *Utils. Servs.*, 392 S.C. at 113, 708 S.E.2d at 765.

**REVERSED AND REMANDED.**

**BEATTY, C.J., KITTREDGE, HEARN and JAMES, JJ., concur.**